IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

WISCONSIN BELL, INC.
d/b/a  AT&T WISCONSIN,

                                                                      OPINION AND ORDER

                     Plaintiff,

                                                                      09-cv-515-bbc

    v.

ERIN CALLISTO, MARK MEYER,
LAUREN AZAR, SPRINT COMMUNICATIONS L.P.,
SPRINT SPECTRUM L.P., NEXTEL WEST CORP.
and NPCR, INC.,

                   Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

      Plaintiff Wisconsin Bell, Inc. is suing the members of the Wisconsin Public Service Commission in their official capacity and several of plaintiff's competitors for violating "Merger Commitment 7.1," which is one of many "voluntary commitments" AT&T, Inc. "offered" to the Federal Communications Commission in order to obtain approval for a merger with BellSouth Corp.  In the Matter of AT&T, Inc. and BellSouth Corp., 22 F.C.C.R. 5662, 5807 (2007).  (For simplicity, I will refer to members of the Wisconsin Public Service Commission collectively as "the commission" and the defendant competitors as "Sprint.").  In particular, plaintiff is challenging the commission's decision  requiring plaintiff to offer

1

defendant Sprint a modified version of an interconnection agreement approved in Kentucky. Plaintiff's position is that the commission violated Merger Commitment 7.1 by requiring plaintiff to modify the Kentucky agreement so that it complies with Wisconsin and federal law. Initially, plaintiff included two other claims in its complaint, dkt. #1, ¶¶ 31-48, but it has abandoned those claims. Plt.'s Br., dkt. #39, at 2 n.1.

Defendants have advanced several reason for dismissing the lawsuit:

- this court lacks subject matter jurisdiction to decide the case because Merger Commitment 7.1 is not a "law" within the meaning of 28 U.S.C. § 1331 and there is no "substantial" federal interest in this case;

- the members of the public service commission are immune from suit;

- plaintiff waived any objection to the commission's decision when plaintiff later "assented to all of the covenants and promises" in the interconnection agreement approved by the commission;

- Merger Commitment 7.1 does not prohibit the commission from requiring plaintiff to adopt interconnection agreements from other states that have been modified to comply with Wisconsin and federal law;

- Even if Merger Commitment 7.1 includes such a prohibition, the commission's modification may be justified as an adjustment for "state-specific pricing," something plaintiff acknowledges is contemplated by the Merger Commitment;

- the commission's ruling is harmless error.

Without deciding any of the other asserted grounds for dismissal, I conclude that

2

this case must be dismissed for lack of subject matter jurisdiction because Merger Commitment 7.1 is not a "law" under § 1331. Even if the Merger Commitment did provide a basis for jurisdiction, plaintiff has not shown that it creates a private right of action against the commission or that the commission violated the commitment.

BACKGROUND

As with so many other disputes between telephone carriers, the origin of this dispute is the Telecommunications Act of 1996, which requires plaintiff and other "incumbent local exchange carriers" to share their infrastructure with competitors. (The "local exchange" consists of the facilities and equipment needed to connect "terminals like telephones, faxes, and modems to other terminals within a geographical area like a city." Verizon Communications Inc. v. FCC, 535 U.S. 467, 489 (2002)). The terms of the competitor's use may be established by agreement or, when negotiation fails, by the state public service commission, in a process the act calls "arbitration." 47 U.S.C. § 252(a) and (b). In addition, under 47 U.S.C. § 252(i), an incumbent must "make available" to a competitor any agreement from another area that has already been approved by another state commission.

The process followed in this case does not fall squarely into any of those categories. Rather, defendant Sprint sought to establish the terms of use under a "Merger Commitment" between AT&T and the Federal Communications Commission. AT&T agreed to a series of

3

these commitments in 2006 in order to obtain approval from the FCC for a merger with BellSouth Corp.  Dkt. #39, at 4.  At issue in this case is Merger Commitment 7.1:

> **Reducing Transaction Costs Associated with Interconnection Agreements**
>
> [Incumbent local exchange carriers, including AT&T Wisconsin] shall make available to any requesting telecommunications carrier any entire effective Interconnection Agreement, whether negotiated or arbitrated, that an AT&T/BellSouth ILEC entered into in any state in the AT&T/BellSouth 22-state ILEC operating territory, subject to state-specific pricing and performance plans and technical feasibility, and provided, further, that an AT&T/BellSouth ILEC shall not be obligated to provide pursuant to this commitment any interconnection arrangement or UNE unless it is feasible to provide, given the technical, network, and OSS attributes and limitations in, and is consistent with the laws and regulatory requirements of, the state for which the request is made.

The parties use the term "port" as shorthand for this process of adopting an agreement from one state in another state.

In November 2007 defendant Sprint notified plaintiff that it wished to port to Wisconsin an interconnection agreement from Kentucky.  When the parties could not agree on the changes that should be made to the Kentucky agreement, they took their dispute to the commission for resolution.  The dispute relevant to this case centers on the definition of "Wireless Local Traffic" in the Kentucky agreement.  The commission opened case no. 6720-TI-211, determined that it had jurisdiction under several state statutes and agreed with defendant Sprint that the definition of "Wireless Local Traffic" should be modified for

4

Wisconsin. <u>Final Decision of Public Service Commission of Wisconsin</u>, No. 6720-TI-211, June 5, 2009, dkt. #11-2. The commission directed the parties "to prepare a complete, written and signed interconnection agreement, consistent with this Final Decision and all party-agreed provisions, and submit the interconnection agreement to the Commission for approval pursuant to 47 U.S.C. § 252(e)."

Less than two months later, the parties submitted a negotiated agreement for approval to the commission. Dkt. #36-12. The agreement included the definition of "Wireless Local Traffic" approved by the commission in the June 5 order. In addition, it included the following two provisions:

> 18.3   Execution of this Agreement by either Party does not confirm or infer that the executing Party agrees with any decision(s) issued pursuant to the Telecommunications Act of 1996 and the consequences of those decisions on specific language in this Agreement. Neither Party waives its rights to appeal or otherwise challenge any such decision(s) and each Party reserves all of its rights to pursue any and all legal and/or equitable remedies, including appeals of any such decision(s).
>
> * * *
>
> 37   INDIVISIBILITY
>
>> The Parties acknowledge that they have assented to all of the covenants and promises in this Agreement as a single whole and that all of such covenants and promises, taken as a whole, constitute the essence of the contract. The Parties further acknowledge that this Agreement is intended to constitute a single transaction, that the obligations of the Parties under this Agreement are interdependent, and that payment obligations

>under this Agreement are intended to be recouped against other
>payment obligations under this Agreement.

(The commission states repeatedly in its briefs that it opened a new case, assigned it the number 5-TI-594 and approved the agreement in an order dated August 19, 2009. However, the commission does not cite the record for these propositions. The most recent document filed in this court from the proceedings before the commission seems to be the application for approval, dated July 28, 2009. Dkt. #36-12.)

OPINION

As always, the court must begin by determining whether subject matter jurisdiction exists. Many disputes between telephone carriers may be heard under 47 U.S.C. § 252(e)(6), which allows federal district courts to determine "whether [an interconnection] agreement [approved by the commission] meets the requirements of section 251 of this title and this section." However, plaintiff does not rely on § 252(e)(6) as a jurisdictional hook in this case because it is arguing that the commission's decision violates "Merger Commitment 7.1," not § 251 or § 252.

Plaintiff asserts that the Merger Commitment provides a basis for jurisdiction under 28 U.S.C. § 1331, which gives district courts "jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." The parties dispute whether

6

"Merger Commitment 7.1" is a "law" within the meaning of § 1331. (The commission raises other arguments about jurisdiction and immunity, but they are all contingent on a finding that plaintiff is not challenging the commission's decision under federal law.)

It is well established that the term "laws" in § 1331 includes both federal statutes and federal common law. Illinois v. City of Milwaukee, 406 U.S. 91, 100 (1972); Turner/Ozanne v. Hyman/Power, 111 F.3d 1312, 1316-17 (7th Cir. 1997). However, it does not seem that the Supreme Court has decided the extent to which an action by the executive branch provides a basis for jurisdiction under § 1331. This is distinct from the question whether § 1331 provides jurisdiction for challenges to the *validity* of an executive agency's action. The answer to that question is "yes" because such challenges arise under a statute, the Administrative Procedure Act. Road Sprinkler Fitters Local Union 669 v. Herman, 234 F.3d 1316, 1319 (D.C. Cir. 2000). The question in this case is not whether Merger Commitment 7.1 is valid under the APA, but whether the commission's decision is valid under the Merger Commitment.

To the extent the Merger Commitment is viewed simply as a contract, district courts would have jurisdiction under § 1331 to enforce it under federal common law if there were an "implication of a sufficiently proximate federal interest to require, at least arguably, the application of a federal standard." Turner/Ozane, 111 F.3d at 1318. However, plaintiff does not argue that the Merger Commitment can be enforced under federal common law,

perhaps because no federal actors are parties to this case and none of the defendants are parties to the Merger Commitment.

Unfortunately, the parties have cited little authority on the jurisdictional question. In its opening brief, plaintiff ignored it. Defendant Sprint ignored it as well. The commission relies on a single case, Walsh v. Butcher and Sherrerd, 395 F. Supp. 597, 599 (E.D. Pa. 1975), in which the court stated that "it is clear that plaintiff's claim arises under no federal law. Rather, her asserted right depends upon [a Securities and Exchange Commission] order which is not a law within the meaning of § 1331." Id. However, the court did not provide any reasoning or cite any authority for this proposition.

In its reply brief, plaintiff cites several cases, none of which directly address the issue in this case. First, plaintiff points to a statement in a footnote in United States v. GTE Corp., 603 F. Supp. 730, 752 (D.D.C. 1984), that a particular FCC order had "the full force of law." However, the court was not considering the scope of § 1331; the question was whether the court should include a particular condition in a consent decree. The court declined to do so because it was "unnecessary" in light of an FCC order that included the same requirement and because "it would require the Court to monitor on an on-going basis the constantly changing competitive rate structures—a task it is unwilling and unable to undertake." Id. Concluding that an order is enforceable in some manner is not the same as saying that the order provides a basis for jurisdiction under § 1331. Thus, GTE is no more

8

helpful to plaintiff than Walsh is to the commission.

Next, plaintiff cites Pacific Bell v. Pac West Inc., 325 F.3d 1114 (9th Cir. 2003), which it says stands for the proposition that jurisdiction under § 1331 exists when the parties "ask the court to interpret the FCC's rulings, to the extent that they are final and binding, and to determine whether the [commission's] actions here were consistent with them." Id. at 1125. However, in Pacific Bell the court did not rely on an "FCC ruling" to justify its decision. It held that some orders of the state commission were "contrary to the [Telecommunications] Act" and that others were "consistent with the Act." Id. at 1119. In this case, plaintiff has not raised a claim that the commission violated the Telecommunications Act or any other statute.

Finally, plaintiff cites Verizon Maryland, Inc. v. Public Service Commission of Maryland, 535 U.S. 635 (2002), for the proposition that "an FCC ruling issued" under the Telecommunications Act provides a basis for jurisdiction under § 1331. In fact, the Court's actual holding was more limited than that. The Court stated: "Verizon seeks relief from the Commission's order on the ground that such regulation is *pre-empted by a federal statute* which, by virtue of the Supremacy Clause of the Constitution, must prevail, and its claim thus presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve." Id. at 642 (emphasis added and internal quotations omitted). Thus, the Court relied on the Telecommunications Act as the federal "law" under § 1331, not simply an FCC

9

ruling.

To the extent that Verizon Maryland is interpreted as holding that an FCC ruling issued under the authority of the Telecommunications Act may be a "law" under § 1331, such a holding seems to be consistent with the rule followed by many federal appellate courts. For example, in Stevens v. Carey, 483 F.2d 188 (7th Cir. 1973), the Court of Appeals for the Seventh Circuit considered whether Executive Order 10988, governing collective bargaining of federal employees, was a "law" under § 1331. In holding that it was not, the court stated that an executive order is not a "law" for the purpose of § 1331 unless the order is "issued pursuant to statutory authority providing for presidential implementation," even if the order is "not beyond the presidential power." Id. at 190. Several other courts have reached similar conclusions. Chasse v. Chasen, 595 F.2d 59, 63 (1st Cir. 1979) (concluding that Customs Service memorandum was not "law" under § 1331 because plaintiff failed to identify statute that "grants the Secretary the authority to issue binding regulations creating rights to work overtime which are enforceable by a federal court"); Dreyfus v. Von Finck, 534 F.2d 24, 29 (2d Cir. 1976) ("Executive Orders issued without statutory authority providing for presidential implementation are generally held not to be 'laws' of the United States."); Local 1498, American Federation of Government Employees v. American Federation of Government Employees, AFL/CIO, 522 F.2d 486 (3d Cir. 1975) (executive order not "law" under § 1331 unless it is "designed to implement and

effectuate the statutes under which they were promulgated"; executive order at issue not "law" because, to the extent that it "regulates and implements federal government personnel policies, it does so solely as a product of executive authority and not as a consequence of congressional law making"). These cases suggest that an agency's decision is not a "law" under § 1331 unless that decision implements a statute under the direction of Congress.

Plaintiff says that the Merger Commitment meets this standard because it was "imposed pursuant to 47 U.S.C. §§ 303(r) and 214(c)." Plt.'s Br., dkt. #43, at 19. Section 214(c) gives the FCC authority to impose conditions on a carrier that "public convenience and necessity may require" when a carrier "acquire[s] or operate[s] any line." Section 303(r) says that the FCC may "[m]ake such rules and regulations and prescribe such restrictions and conditions, not inconsistent with law, as may be necessary to carry out the provisions of this chapter." Neither of these statutes seems to provide the authority plaintiff needs. Section 214(c) may have given the FCC authority to impose conditions on plaintiff's merger, but all this means is that the FCC did not violate the law by imposing the condition, in the same way that the order in <u>Stevens</u> was "not beyond the presidential power." Nothing in § 214(c) suggests that Congress intended to give the FCC the authority to create a "law" that plaintiff could use as a basis for jurisdiction under § 1331. Section 303(r) adds nothing because plaintiff does not argue that Merger Commitment 7.1 was "necessary to carry out the provisions" of Chapter 47. In fact, the parties agree that the Merger Commitment

11

represented an *extension* of § 252(i), not an attempt to carry it out.

To the extent the FCC's own intent is relevant, its order seems to support the view that the Merger Commitment cannot be enforced under § 1331. In its order, the FCC wrote that "AT&T made a series of voluntary commitments that *are enforceable by the Commission* . . . These conditions are voluntary, enforceable commitments by AT&T but *are not general statements of Commission policy and do not alter Commission precedent or bind future Commission policy or rules*." In the Matter of AT&T, Inc. and BellSouth Corp., 22 F.C.C.R. at 5772 (emphasis added). See also id. at 5807 ("For the avoidance of doubt, unless otherwise expressly stated to the contrary, all conditions and commitments proposed in this letter are enforceable by the FCC.") This language, which plaintiff does not address in its briefs, suggests that the FCC did not intend the Merger Commitment to be a generally enforceable "law" in federal court, but that plaintiff was supposed to bring any disputes regarding the scope of the Merger Commitment to the FCC. In fact, this is what plaintiff did originally. In February 2008, plaintiff filed a petition with the FCC asking for a declaration of its rights under the Merger Commitment. Final Decision of Public Service Commission of Wisconsin, No. 6720-TI-211, dkt. #11-2, at 3. For reasons the parties do not explain, plaintiff later withdrew that petition before the FCC ruled on it. Id. (In another case, Michigan Bell argued that the state commission "lacks authority to interpret and enforce FCC merger commitments" because that is a matter reserved for the FCC. Michigan Bell Telephone Co.

12

v. Isiogu, No. 09-12577, 2010 WL 746377, *5 (E.D. Mich. Mar. 10, 2010). That seems to have been plaintiff's position before the commission in this case, but plaintiff does not raise that issue in this court.) Accordingly, I conclude that plaintiff has failed to meet its burden to show that subject matter jurisdiction exists under § 1331.

Even if this conclusion is wrong, there are several other problems with plaintiff's claim. A separate question, but one related to jurisdiction is whether Merger Commitment 7.1 creates a private right of action under which plaintiff may sue. Verizon, 535 U.S. at 642-43 (noting that these two questions are distinct). Generally, "private rights of action to enforce federal law must be created by Congress. Without [a showing of congressional intent], a cause of action does not exist and courts may not create one, no matter how desirable that might be as a policy matter, or how compatible with the statute. " Alexander v. Sandoval, 532 U.S. 275, 286-87 (2001). To the extent this principle applies in this case, it is fatal to plaintiff's claim. There is no indication that Congress intended to create a right to sue under the Merger Commitment. The nature of the order itself belies any argument that it gave plaintiff a "right" that it may enforce in federal court. After all, the Merger Commitments represent concessions that plaintiff made to the FCC in order to obtain approval of a merger. That is, plaintiff was *giving up* rights as consideration for obtaining a benefit from the FCC, not gaining a right. Plaintiff points to nothing in the order supporting a view that the FCC wanted to enable plaintiff to use the Merger Commitments as a sword

13

in litigation.

Finally, even if Merger Commitment 7.1 provided a basis for jurisdiction under § 1331 and created a private right of action, plaintiff's claim would fail because plaintiff does not identify a provision of the Merger Commitment that has been violated. (Another potential problem is that plaintiff may have waived any objection when it consented to the final agreement after negotiations, but I do not consider that question.) Plaintiff's position is that the commission violated the Merger Commitment simply by modifying the interconnection agreement so that it complied with state and federal law. (Plaintiff does not challenge the commission's determination that the Kentucky agreement could not be adopted in Wisconsin "as is" without violating the law.) Plaintiff relies on the following passage from the Merger Commitment: "AT&T/BellSouth ILEC shall not be obligated to provide pursuant to this commitment any interconnection arrangement or UNE unless it is feasible to provide, given the technical, network, and OSS attributes and limitations in, and is consistent with the laws and regulatory requirements of, the state for which the request is made."

I agree with defendants that the provision plaintiff cites does not support its position. To the extent the Merger Commitment gives plaintiff any rights at all, it is the right not to be "obligated" to adopt any agreement that is not "consistent with the laws and regulatory requirements of the state." However, plaintiff is not arguing that the commission has

14

obligated it to violate the law. Rather, the reverse is true: the commission is requiring plaintiff to *follow* the law.

Plaintiff's interpretation of the provision seems to be that it alone has the right to request modifications to an out-of-state agreement to make its provisions consistent with local laws. In other words, plaintiff argues, if an agreement needs to be changed, plaintiff has sole discretion to accept those changes or simply reject the agreement outright. It may be true that the Merger Commitment does not expressly authorize competitors to request changes that are necessary to comply with local laws, but it does not prohibit those requests either. In fact, plaintiff's argument that the Merger Commitment limits the commission's authority was anticipated and rejected by the FCC in its order:

> It is not the intent of these commitments to restrict, supersede, or otherwise alter state or local jurisdiction under the Communications Act of 1934, as amended, or over the matters addressed in these commitments, or to limit state authority to adopt rules, regulations, performance monitoring programs, or other policies that are not inconsistent with these commitments.

22 F.C.C.R. at 5807. I agree with the observation of the District Court for the Eastern District of Michigan that "this 'savings clause' does nothing to expand the [state commission's] authority, [but] it does make clear that, to the extent arbitral issues and the merger commitments overlap, the [state commission] retains authority to resolve those issues." Isiogu, 2010 WL 746377, at *6 -7.

Thus, plaintiff cannot rely on the Merger Commitment to show that the commission

15

violated federal law. Even if the Merger Commitment does not expressly authorize the commission to modify the agreement over plaintiff's objection, this simply means that the commission had to use its authority under other statutes and regulations. Plaintiff does not argue that the commission would have lacked such authority in the absence of the Merger Commitment and it fails to point to any federal statute or regulation that the commission violated. Accordingly, this case must be dismissed.

ORDER

IT IS ORDERED that this case is DISMISSED for lack of subject matter jurisdiction. The clerk of court is directed to enter judgment in favor of defendants Erin Callisto, Mark Meyer, Lauren Azar, Sprint Communications L.P., Sprint Spectrum L.P., Nextel West Corp. and NPCR, Inc. and close this case.

Entered this 24th day of August, 2010.

> BY THE COURT:
> /s/
> BARBARA B. CRABB
> District Judge